FILED
United States Court of Appeals
Tenth Circuit

October 26, 2018

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

SAMUEL V. MARTINEZ,

    Petitioner - Appellant,

v.

TRAVIS TRANI, Co. State Penitentiary;
THE ATTORNEY GENERAL OF THE
STATE OF COLORADO,

    Respondents - Appellees.

No. 18-1073
(D.C. No. 1:16-CV-01138-MSK-KMT)
(D. Colo.)

_____

**ORDER DENYING A CERTIFICATE OF APPEALABILITY**
_____

Before **LUCERO**, **HARTZ**, and **McHUGH**, Circuit Judges.
_____

Samuel V. Martinez, an inmate in the custody of the Colorado Department of

Corrections, requests a certificate of appealability (COA) to challenge the denial by the

United States District Court for the District of Colorado of his application for relief under

28 U.S.C. § 2254.  *See* 28 U.S.C. § 2253(c)(1)(A) (requiring a COA for a prisoner in state

custody to appeal from the denial of a writ of habeas corpus).  Because Mr. Martinez has

failed to make a substantial showing of the denial of a constitutional right as required by

28 U.S.C. § 2253(c)(2), we deny a COA and dismiss the appeal.

Mr. Martinez was convicted on two counts of aggravated robbery in a Colorado

jury trial and adjudicated a habitual criminal, leading to a 64-year prison sentence.  The

Colorado Court of Appeals (CCA) denied relief on direct appeal, and the Colorado

Supreme Court declined review. Mr. Martinez then sought postconviction relief under Colorado Rule of Criminal Procedure 35(c). The trial court denied relief, the CCA affirmed, and the state supreme court again declined review. On May 16, 2016, Mr. Martinez, represented by counsel, filed this § 2254 application for relief. Acting pro se, he later filed an amended application, after being advised by the magistrate judge that the original application would be superseded and he would need to include in the amended application every claim he wished to pursue, including claims that had been in the original application.

We can summarily dispose of most of the claims Mr. Martinez appears to pursue in this court. Some were in his original application but not in his pro se amended application, which superseded the original application. *See Predator Int'l, Inc. v. Gamo Outdoor USA, Inc.*, 793 F.3d 1177, 1180-81 (10th Cir. 2015) ("[A]n amended pleading supersedes the pleading it modifies and remains in effect throughout the action unless it subsequently is modified." (internal quotation marks omitted)). Other claims are not properly before us because they were never raised in district court. *See Ochoa v. Workman*, 669 F.3d 1130, 1146 n.15 (10th Cir. 2012). And Mr. Martinez pursues in this court some claims in his amended application that were dismissed as untimely by the district court, yet he does not challenge that basis of the dismissal, thereby waiving review. *Cf. Lebahn v. Nat'l Farmers Union Unif. Pension Plan*, 828 F.3d 1180, 1188 (10th Cir. 2016) ("When a district court dismisses a claim on two or more independent grounds, the appellant must challenge each of those grounds.").

There remain only two claims for us to resolve: (1) that the prosecution improperly commented during closing argument on Mr. Martinez's silence in response to police questions, and (2) that his trial counsel provided constitutionally inadequate advice on the potential sentence he faced.

A COA will issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This standard requires "a demonstration that . . . includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotation marks omitted). In other words, the applicant must show that the district court's resolution of the constitutional claim was either "debatable or wrong." *Slack*, 529 U.S. at 484.

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), provides that when a claim has been adjudicated on the merits in a state court, a federal court can grant habeas relief only if the applicant establishes that the state-court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1), (2). As we have explained:

> Under the "contrary to" clause, we grant relief only if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Court has on a set of materially indistinguishable facts.

3

*Gipson v. Jordan*, 376 F.3d 1193, 1196 (10th Cir. 2004) (brackets and internal quotation marks omitted). Relief is provided under the "unreasonable application" clause "only if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* (brackets and internal quotation marks omitted). Thus, a federal court may not issue a habeas writ simply because it concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. *See Gipson*, 376 F.3d at 1196. Rather, "[i]n order for a state court's decision to be an unreasonable application of this Court's case law, the ruling must be objectively unreasonable, not merely wrong; even clear error will not suffice." *Virginia v. LeBlanc*, 137 S. Ct. 1726, 1728 (2017) (per curiam) (internal quotation marks omitted). To prevail, "a litigant must show that the state court's ruling was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* (internal quotation marks and ellipses omitted).

In addition, the Antiterrorism and Effective Death Penalty Act (AEDPA) establishes deferential standards of review for state-court factual findings. "AEDPA . . . mandates that state court factual findings are presumptively correct and may be rebutted only by 'clear and convincing evidence.'" *Saiz v. Ortiz*, 392 F.3d 1166, 1175 (10th Cir. 2004) (quoting 28 U.S.C. § 2254(e)(1)).

Mr. Martinez asserts that the prosecution impermissibly commented at trial on his silence during his interrogation by police. We first describe the interrogation. After

4

police arrested Mr. Martinez, he waived his *Miranda* rights orally and in writing. Officers then showed him stills from a surveillance camera at the robbery scene, and he responded, "Damn." Officers told him they knew he had committed the robbery, encouraged him to confess, and asked him whether he had committed the crime to get money for drugs. He "nodded his head affirmatively during and after the question and then requested an attorney, at which point the officers ended the interview." *People v. Martinez*, No. 09CA0613, at 7 (Colo. App. Dec. 9, 2010). The whole interaction took about six minutes. Portions of a video of the interrogation were played for the jury at trial.

During closing argument the prosecutor characterized Mr. Martinez's behavior in the interrogation as follows:

> And [defense counsel] talked to you about a number of things that weren't asked in the interview. All the things that could have been missing from the interview. It just so happens there's something else missing. [Mr. Martinez] looking at Detective Dawson and Detective White saying, "You guys are nuts. Are you kidding me? This wasn't me. I wasn't there. I didn't do this." That's not how [Mr. Martinez] replied when he was confronted by the detectives in this case.
>
> And [defense counsel] sat here and he talked to you about all the rational reasons that anybody in [Mr. Martinez's] situation would have went and talked to those officers. There was a lot of legitimate reasons why. Well, how about the fact that [he] was curious. [He] wanted to know[,] what do you have on me? I can sit there. I can kick back in the chair. I can cross my leg. Relax. Let them do the talking. Because he's curious. Because of that curiosity. That's why he's not screaming, "This wasn't me."

App. at 649. Mr. Martinez's counsel did not object at the time, although he moved for a mistrial on the basis of those statements after the jury was excused to deliberate. The trial court denied the motion and the CCA affirmed.

5

Mr. Martinez argues that the prosecutor's statements were improper under *Doyle v. Ohio*, 426 U.S. 610, 618 (1976), which held that once a person in custody has been given *Miranda* warnings, it is "fundamentally unfair and a deprivation of due process to allow [the] arrested person's silence to be used to impeach an explanation subsequently offered at trial." "In [that] situation[], the State . . . seeks to make use of the defendant's exercise of [*Miranda*] rights in obtaining his conviction." *Wainwright v. Greenfield*, 474 U.S. 284, 292 (1986). But *Doyle* concerned a suspect who had not waived his *Miranda* rights. And Mr. Martinez has not offered, nor have we found, any Supreme Court decision applying *Doyle* where, as here, the suspect was silent after expressly waiving his *Miranda* rights. On the contrary, the Court has held that there was no due-process violation when the prosecution commented on an omission by a defendant who waived his rights by speaking to police. *See Anderson v. Charles*, 447 U.S. 404, 408 (1980); *see also Fletcher v. Weir*, 455 U.S. 603, 607 (1982) (no due process violation occurred when the prosecution commented on a suspect's silence when the suspect did not receive *Miranda* warnings at all). The Colorado courts' ruling was therefore not contrary to or an unreasonable application of clearly established federal law.

Mr. Martinez's final claim is that his trial counsel misunderstood the nature of the habitual-criminal charges against him and consequently gave him incorrect advice about the prison time he faced if convicted at trial. He alleges that this prejudiced him, because if he had been properly advised of the sentence he risked at trial, he would have sought a plea agreement with the State.

A defendant claiming ineffective assistance of counsel during plea bargaining must make two showings: first, "that counsel's representation fell below an objective standard of reasonableness," and second, that "the outcome of the plea process would have been different with competent advice." *Lafler v. Cooper*, 566 U.S. 156, 163 (2012). To satisfy the second requirement when a defendant is alleging counsel's inadequate advice caused him to reject a plea and go to trial, the defendant must show "that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances)," "that the court would have accepted its terms," and "that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed." *Lafler*, 566 U.S. at 164.

Mr. Martinez has failed to make any of those showings. In Mr. Martinez's Rule 35(c) proceedings in state court, the trial court found that it would not have accepted any plea deal with terms substantially less severe than the sentence Mr. Martinez received after conviction. The Colorado Court of Appeals affirmed the trial court's finding, and Mr. Martinez has not presented any facts that would rebut it. Also, the CCA found that he had not alleged that the State ever offered him a plea deal, and the prosecution represented that it had not. *See Lafler*, 566 U.S. at 168 ("If no plea offer is made, . . . the issue raised here simply does not arise.").

Reasonable jurists could not debate that the Colorado courts did not act contrary to, or unreasonably apply, clearly established federal law in resolving Mr. Martinez's

preserved claims.  We therefore **DENY** a COA, and **DISMISS** the appeal.  We **GRANT**

the motion to proceed *in forma pauperis*.

Entered for the Court

Harris L Hartz
Circuit Judge