FILED
United States Court of Appeals
Tenth Circuit

December 17, 2018

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

BERNARD JONES,

      Petitioner - Appellant,

v.

LOU ARCHULETA, Warden; THE
ATTORNEY GENERAL OF THE STATE
OF COLORADO,

      Respondents - Appellees.

No. 18-1228
(D.C. No. 1:16-CV-03048-PAB)
(D. Colo.)

_____

**ORDER DENYING A CERTIFICATE OF APPEALABILITY**
_____

Before **LUCERO**, **HARTZ**, and **McHUGH**, Circuit Judges.
_____

Bernard Jones, an inmate in the custody of the Colorado Department of

Corrections, requests a certificate of appealability (COA) to challenge the denial by the

United States District Court for the District of Colorado of his application for relief under

28 U.S.C. § 2254. *See* 28 U.S.C. § 2253(c)(1)(A) (requiring a COA for a prisoner in state

custody to appeal from the denial of a writ of habeas corpus). Because Mr. Jones has

failed to make a substantial showing of the denial of a constitutional right as required by

28 U.S.C. § 2253(c)(2), we deny a COA and dismiss the appeal.

**I.**     **Background and Standard of Review**

In 1997 Mr. Jones was convicted of first-degree sexual assault and possession with

intent to distribute a controlled substance, and he was adjudicated a habitual criminal. He

is serving sentences of 64 years for the sexual assault and 96 years for the controlled-substance conviction. Mr. Jones contends that he and the victim had consensual sex and that he did not intend to distribute a controlled substance.

In 2000 the Colorado Court of Appeals (CCA) denied relief on direct appeal, and the Colorado Supreme Court denied review. Mr. Jones then sought postconviction relief under Colorado Rule of Criminal Procedure 35(c), alleging several violations of his constitutional rights, including ineffective assistance of counsel. The trial court denied relief, but in 2003 the CCA remanded the case for an evidentiary hearing on claims of ineffective assistance relating to counsel's handling of bite-mark evidence, the victim's juvenile conviction, and the victim's alleged gang affiliation. In 2006 the trial court held an evidentiary hearing on these claims, and then in 2012 it reconvened and completed the hearing before denying relief. The CCA affirmed and the Colorado Supreme Court denied review.

In December 2016 Mr. Jones applied for relief under 28 U.S.C. § 2254. The district court held that he was not entitled to relief on any claim and denied Mr. Jones's motions for additional discovery, an evidentiary hearing, and appointment of counsel.

In this court Mr. Jones presents a claim of vindictive prosecution and four claims of ineffective assistance of counsel: (1) failing to investigate and present evidence of the victim's gang affiliation; (2) failing to investigate and present evidence of the victim's pending juvenile adjudication; (3) failing to have bite-mark evidence tested by a defense expert; and (4) representing Mr. Jones despite a conflict of interest.

A COA will issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  This standard requires "a demonstration that . . . includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotation marks omitted).  In other words, the applicant must show that the district court's resolution of the constitutional claim was either "debatable or wrong."  *Id.*

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) provides that when a claim has been adjudicated on the merits in a state court, a federal court can grant habeas relief only if the applicant establishes that the state-court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(1), (2).  As we have explained:

> Under the "contrary to" clause, we grant relief only if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Court has on a set of materially indistinguishable facts.

*Gipson v. Jordan*, 376 F.3d 1193, 1196 (10th Cir. 2004) (brackets and internal quotation marks omitted).  Relief is provided under the "unreasonable application" clause "only if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  *Id.*

3

(brackets and internal quotation marks omitted). Thus, a federal court may not grant relief simply because it concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. *See id.* at 1196. Rather, "[i]n order for a state court's decision to be an unreasonable application of this Court's case law, the ruling must be objectively unreasonable, not merely wrong; even clear error will not suffice." *Virginia v. LeBlanc*, 137 S. Ct. 1726, 1728 (2017) (per curiam) (internal quotation marks omitted). To prevail, "a litigant must show that the state court's ruling was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* (internal quotation marks omitted).

In addition, AEDPA establishes a deferential standard of review for state-court factual findings, mandating "that state court factual findings are presumptively correct and may be rebutted only by 'clear and convincing evidence.'" *Saiz v. Ortiz*, 392 F.3d 1166, 1175 (10th Cir. 2004) (quoting 28 U.S.C. § 2254(e)(1)). Further, the Supreme Court has held that review under § 2254(d)(1), just as review under § 2254(d)(2), "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011); *see id.* at 185 n. 7. "AEDPA's deferential treatment of state court decisions must be incorporated into our consideration of a habeas petitioner's request for [a] COA." *Dockins v. Hines*, 374 F.3d 935, 938 (10th Cir. 2004).

## II.   Mr. Jones's claims

### A. Vindictive Prosecution

Mr. Jones contends that the prosecutor, Gordon Denison, aggressively prosecuted this case because of his vindictiveness toward Mr. Jones for successfully challenging a prior conviction. The state court did not conduct an evidentiary hearing at which Mr. Jones could develop a record to produce new evidence in support of this claim. Our review is confined to the state-court record. *See Cullen*, 563 U.S. at 181. And the only evidence Mr. Jones points to in support of his claim is meager. All he does is (1) assert that Mr. Denison refused to offer a plea bargain and (2) note statements by the trial judge that may suggest that Mr. Denison was an aggressive prosecutor, but not that he was more aggressive in Mr. Jones's case than in prior cases. The CCA's conclusion that this record did not support a claim of vindictiveness did not constitute an unreasonable application of federal law or an unreasonable determination of facts. *See* 28 U.S.C. § 2254(d)(1), (2). Mr. Jones now also argues that after taking over the case from a different prosecutor, Mr. Denison amended the habitual-criminal charges to give Mr. Jones the maximum aggravated sentence. But Mr. Jones did not raise this argument in district court, so we decline to address it. *See Parker v. Scott*, 394 F.3d 1302, 1307 (10th Cir. 2005) (§ 2254 claims not raised in district court are waived).

### B. Ineffective Assistance

To prevail on claims of ineffective assistance of counsel, a defendant must show both that his counsel's performance was deficient—"that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth

Amendment"—and that "the deficient performance prejudiced [his] defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In conducting this analysis, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689 (internal quotation marks omitted). Further, to establish that a defendant was prejudiced by counsel's deficient performance, he "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693. "Failure to make the required showing of *either* deficient performance or sufficient prejudice defeats the ineffectiveness claim." *Id.* at 700 (emphasis added).

### 1. Gang affiliation of victim

Mr. Jones first argues that his counsel was ineffective for failing to investigate and to present evidence about the victim's gang affiliation. According to Mr. Jones, his trial strategy was to show that he and the victim had engaged in consensual sex and that the victim had a motive to lie about it because she belonged to a gang that forbade having sex with nonmembers. The CCA held that Mr. Jones did not show deficient performance. It reasoned that defense counsel twice unsuccessfully sought a continuance to pursue an investigation of the victim's gang ties and that once the case went to trial, defense

6

counsel could have made a strategic decision not to present the limited evidence he did have on the gang ties.

In this court Mr. Jones contends that his counsel's performance was deficient because counsel did not call witnesses to support the motions for continuance. If presented with those witnesses, he argues, the court may have granted a continuance and given defense counsel time to further investigate this issue before trial. He points to defense counsel's testimony that he may have made a mistake by relying on affidavits and not calling witnesses. But counsel went on to say that he had no recollection of ever having called witnesses for a continuance motion in any proceeding and that the only possible mistake he could have made would have been not calling witnesses when the court insisted on live witnesses. And there is nothing in the record showing that the trial court had so insisted.

Mr. Jones also contends that, despite the denial of a continuance, counsel already had some evidence of the victim's gang affiliation and should have used it at trial. He asserts that the district court erred by accepting the state court's reasoning that defense counsel may have made a strategic decision not to present this evidence at trial. He argues that defense counsel clearly did *not* make such a strategic decision, as shown by the motions asking for more time to investigate the victim's gang ties. But that establishes only that counsel intended to put on evidence if he obtained more than he had. Mr. Jones has made no showing that the evidence already gathered was admissible or persuasive. And when counsel has conducted an adequate investigation, the decision

7

whether to put on certain evidence is the sort of decision that is "virtually unchallengeable" on an ineffective-assistance claim. *Strickland*, 466 U.S. at 690.

Moreover, the CCA ruled that Mr. Jones had not shown any prejudice from the alleged deficient performance. As the CCA pointed out, even Mr. Jones's own expert witness could not say that there was a reasonable probability that there would have been a different outcome if defense counsel had more thoroughly explored the alleged gang ties.

No reasonable jurist could debate the district court's rejection of this claim.

### 2. Juvenile adjudication against victim

Mr. Jones's second ineffective-assistance claim is that his counsel failed to impeach the victim's testimony with evidence of her juvenile adjudication for theft. According to Mr. Jones, the favorable plea deal she received shortly before Mr. Jones's trial could have been portrayed as a possible motive for her changing her testimony about who provided her with cocaine. (Before accusing Mr. Jones of supplying her and others with cocaine, the victim allegedly stated to the police that two other people with whom they were partying had supplied the drug.)

The CCA gave several reasons for concluding that counsel's performance was not deficient: (1) although a charge pending during trial may be evidence of motive or bias, the victim's juvenile adjudication was no longer pending at the time of trial; (2) the record supported the trial court's finding that the victim's plea deal was not unusual in a way that would make her testimony at trial suspicious; and (3) counsel may have made a reasonable strategic determination not to impeach the victim with this evidence because it

8

could have backfired by highlighting the age gap between the teenage victim and Mr. Jones, who was in his late 30s.

No reasonable jurist could debate the district court's denial of relief on this claim.

### 3. Bite-mark evidence

Mr. Jones's third ineffective-assistance claim concerns bite-mark evidence. The victim had a bite mark on her face and alleged that Mr. Jones had bitten her during the sexual assault. At trial an expert for the prosecution testified that the bite mark was consistent with Mr. Jones's dentition. Mr. Jones's counsel cross-examined this expert but did not present a bite-mark expert for the defense. Mr. Jones claims that his counsel was ineffective for failing to prepare a defense expert to testify. He alleges that counsel failed to send all the evidence to the defense's hired expert, Dr. Dial, so that he could conduct his own testing in time to testify at trial.

The CCA rejected the claim of deficient performance because Mr. Jones's counsel consulted an expert before trial and then reasonably awaited the prosecution's report before deciding whether to conduct further testing, tried unsuccessfully to get a continuance for its expert to test the evidence and to prepare to testify, learned from the expert that he was unable to exclude Mr. Jones as the source of the bite mark, and, after all that, made the reasonable strategic decision to attack the prosecutor's expert on cross-examination instead of calling a defense expert. The district court concluded that the CCA's decision was not based on an unreasonable application of the law or on clearly erroneous fact-finding, so relief was barred by AEDPA. The district court also denied Mr. Jones's motion for additional discovery and an evidentiary hearing on this claim,

9

because review was limited to the state-court record under *Cullen*, 563 U.S. at 181, and because the evidence that Mr. Jones sought did not relate to deficient performance.

In this court Mr. Jones contends that the district court did not address his argument that the state trial court reneged on a promise to reconvene the remanded Rule 35(c) proceeding to allow for testimony from Dr. Dial to show deficient performance by counsel. According to Mr. Jones, Dr. Dial could prove deficient performance by testifying that counsel failed to send him all the evidence necessary to be ready to testify at trial; a different expert, Dr. Cardoza, could then prove prejudice by testifying that the bite-mark evidence exculpated Mr. Jones. But Mr. Jones's summary of the record is inaccurate, because the state court promised to reconvene only to hear Dr. Cardoza testify about the prejudice prong—not to hear Dr. Dial testify about deficient performance. Dr. Cardoza could not testify to facts relevant to deficient performance because he was not involved in this case until well after trial.

In sum, Mr. Jones does not direct us to evidence in the state-court record that would show that the state court erred in determining that there had not been deficient performance. No reasonable jurist could debate the district court's ruling that the CCA's rejection of this claim was not based on an unreasonable determination of the facts or was not contrary to, or involved an unreasonable application of, *Strickland*.

### 4. Conflict of interest

Mr. Jones claims counsel was ineffective because of a conflict of interest that deprived him of the chance to properly weigh his right to testify at trial. He explains that the public defender's office representing him at trial had also defended him for two of his

10

prior convictions, and he wished to challenge those convictions before trial so that they could not be used to impeach him if he testified. He states that the trial court recognized an "actual conflict of interest" and appointed an attorney to attack these convictions before trial, but the court allegedly failed to notify this attorney that he had been appointed. Without help from this appointed counsel, Mr. Jones argues, he could not weigh whether to testify at trial or whether his prior convictions would be used against him. The CCA rejected this claim for lack of prejudice. It noted (1) that when the prior convictions were later challenged by nonconflicted counsel, the challenge failed; and (2) that Mr. Jones did not testify at trial, so if fear of impeachment had led to his decision not to testify, the fear was valid. Relying on *Cuyler v. Sullivan*, 446 U.S. 335 (1980), and *Holloway v. Arkansas*, 435 U.S. 475 (1978), Mr. Jones contends that he is entitled to a reversal despite the clear proof of no prejudice. But those cases both involved attorneys who represented multiple defendants, a situation not present here. No reasonable jurist could debate the federal district court's decision that the decision of the CCA was not contrary to and did not unreasonably apply clearly established Supreme Court precedent.

### C. Supplemental Reply Brief

Finally, Mr. Jones argues that the district court abused its discretion by not granting an enlargement of time to file a supplemental reply brief. But the court explained that it denied this motion because it had previously granted five extensions of time to file a reply. We see no abuse of discretion.

11

Reasonable jurists could not debate the correctness of the district court's denial of relief under § 2254.  We therefore **DENY** a COA, and **DISMISS** the appeal.

Entered for the Court

Harris L Hartz
Circuit Judge